PETER D. HOFFMAN, ESQ. (PH-8306)
BETTY J. POTENZA, ESQ. (BP-1795)
LAW OFFICE OF PETER D. HOFFMAN, P.C.
Attorneys for Plaintiff
200 Katonah Avenue
Katonah, New York 10536

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x

EILEEN LENAHAN,

Plaintiff,

-against-

JANA RINALDO, individually, RHONDA HUEMANN, Individually and in her capacity as a Director of the YWCA of White Plains and Central Westchester, and YWCA OF WHITE PLAINS AND CENTRAL WESTCHESTER,

Defendants.

---------------------------------------------x

Case No.

**COMPLAINT and DEMAND FOR INJUNCTIVE RELIEF**

Plaintiff Demands Trial by Jury in this Action

08 CIV. 6876

JUDGE ROBINSON

Plaintiff Eileen Lenahan (hereinafter referred to as "Plaintiff" and/or Lenahan), by her attorney, Law Office of Peter D. Hoffman, P.C., as and for a complaint against the defendants, alleges as follows:

**NATURE OF ACTION**

1. This action is brought against defendant Jana Rinaldo (hereinafter "Rinaldo) for civil assault and battery, against defendants Rhonda Huemann and YWCA of White Plains and Central Westchester for conspiracy, creation of a hostile work

environment, intentional infliction of emotional distress, defamation, wrongful discharge, and violation of plaintiff's procedural and substantive due process rights. Specifically, defendants Huemann and YWCA conspired to terminate the plaintiff's employment in retaliation for her exposing their unlawful practices including child abuse and endangerment.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction in that violations of federal law are alleged and has supplemental jurisdiction over the claims brought under New York common law pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**THE PARTIES**

4. Plaintiff is a domiciliary of New York State residing at 49 White Birch Road in Pound Ridge, New York.

5. Defendant JANA RINALDO (hereinafter "Rinaldo), who is sued in her individual and personal capacities only, at all times relevant to this complaint, was employed by the defendant YWCA of White Plains and Central Westchester as a teacher in its pre-school educational program.

6. Defendant RHONDA HUEMANN (hereinafter "Huemann"), who is sued herein in her individual and official capacities, at all times relevant to this complaint, was employed by the defendant YWCA of White Plains and Central Westchester as Director of its Nursery School Program.

7. Defendant YWCA OF WHITE PLAINS AND CENTRAL WESTCHESTER

(hereinafter "YWCA") is, upon information and belief, a not-for-profit corporation, organized and existing pursuant to the laws of the State of New York, with a principal address located at 515 North Street, White Plains, NY.

**FACTS**

8. Plaintiff was hired by defendant YWCA on or about June of 1997.

9. Plaintiff worked for defendant YWCA at various times from June of 1997 until August of 2007.

10. Defendant YWCA at no time disciplined or reprimanded plaintiff for poor job performance. However, on a meeting held on January 10, 2007, Defendant Huemann informed Plaintiff that she would lose her job if she continued to report child abuse as required by statute.

11. During her time of employment with defendant YWCA, and more particularly during the 2006-2007 school year, plaintiff was assigned to assist defendant Rinaldo in the teaching and supervision of children enrolled in the YWCA Nursery School Program.

12. While assisting the aforesaid defendant Rinaldo, plaintiff personally observed Rinaldo physically and emotionally abusing the children entrusted to her care.

13. On one occasion, plaintiff observed defendant Rinaldo scream at a child and pinch his face until it turned red. When the parent of said child questioned the marks on the child's face, Plaintiff witnessed Defendant Rinaldo fabricate a story to deceive the parent. Plaintiff immediately reported this event to Defendant Huemann, as required by law.

14. On one occasion, plaintiff observed defendant Rinaldo send children into the

pool without appropriate protection which resulted in the children sinking to the bottom of the pool nearly drowning. Plaintiff reported this to Defendant Heumann as required by law.

15. On one occasion, plaintiff observed defendant Rinaldo violently pull a child's arm, causing injury. Plaintiff reported this to Defendant Heumann as required by law.

16. In November of 2006, in a fit of anger, Defendant Rinaldo grabbed an approximately three year old boy by the upper arms and shoulder area, violently shaking him. His head was snapping to and fro. Plaintiff intervened and then Defendant Rinaldo hoisted him by his arms, kicked the classroom door open and swung him through. Rinaldo grabbed the child again, hoisted him by his arms, and swung him through the classroom door, kicking the door open. Plaintiff immediately reported this to Defendant Heumann about the possibility of the child sustaining brain injury as a result of the violent assault. Heumann flippantly dismissed Plaintiff's concerns.

17. Plaintiff reported each and all of the above referenced incidents of child abuse to defendant Huemann.

18. Plaintiff reported other incidents of child abuse committed by defendant Rinaldo to defendant Huemann.

19. Such reporting was required under New York Educ. Law §1132, Duties of the commissioner; child abuse in an educational setting as read together with N.Y. Soc. Serv. Law § 413.

20. Defendant Rinaldo made threatening statements to the plaintiff on or about

October, 2006, stating to plaintiff that if plaintiff ever dared question her authority she would tear plaintiff another asshole and that plaintiff would not survive. Plaintiff reported this conduct to Defendant Heumann.

21. In or about November 2006, in response to plaintiff's questioning Rinaldo's removing a swim diaper from one child and putting on a pull up, and allowing another child already wearing a pull up to enter the pool, which was dangerous because the pull ups would become heavy in the water and cause the children to sink, defendant Rinaldo told the plaintiff not to say a word, and said "your children's eyes." Plaintiff took this as a threat to plaintiff's family and caused the plaintiff to have nightmares and fear for the safety of her family, which fear continues. Plaintiff reported this conduct to Defendant Heumann.

22. Defendant Rinaldo in or about December 2006, shoved plaintiff in the left side of her body, pushing her into a desk, when she attempted to go to the aid of another teacher and injured student. Defendant Rinaldo told the plaintiff that she was only there to "fucking" serve her. This incident caused the plaintiff to feel stunned, horrified, angry and afraid for her safety and that of the children in the school. Plaintiff reported this conduct to Defendant Heumann.

23. In or about February or March of 2007, in response to defendant Huemann telling plaintiff that plaintiff was asked to attend a CPSE meeting for a child, defendant Rinaldo flung a plastic lunch tray with tremendous force at the plaintiff, causing the plaintiff to feel frightened and fear for her safety. Plaintiff reported this conduct to Defendant Heumann.

24. Defendant Huemann had a duty to take corrective action in response to the child

abuse she had been made aware of under New York Educ. Law §1132, Duties of the commissioner; child abuse in an educational setting as read together with N.Y. Soc. Serv. Law § 413.

25. Defendant Huemann took no corrective action to respond to the child abuse events she had been made aware of.

26. Defendant Huemann repeatedly and wrongly told parents that Plaintiff had never made any complaints about abuse.

27. Defendant Huemann and defendant YWCA conspired to conceal the child abuse events on the premises of defendant YWCA.

28. On one occasion, Defendants Huemann and Rinaldo falsely and maliciously told a parent that Plaintiff was guilty of pulling a child's arm, and they also told parents that Plaintiff has a "reputation" for "this kind of thing."

29. In April 2007, Elissa Fanning, an independent contractor physical therapist for Defendant YWCA and mandated reporter, noticed a student's face was red.

30. Ms. Fanning asked Plaintiff why the student's face was red. Plaintiff replied it was because her face was squeezed by Defendant Rinaldo.

31. As required by NY. Soc. Serv. Law § 413, Ms. Fanning made a report to CPS. CPS told her to make a report to the City of White Plains Police.

32. In response to Ms. Fanning's report, the City of White Plains Police began an investigation of child abuse at Defendant YWCA.

33. Plaintiff appeared at the Police Department of the City of White Plains on May 7, 2007, May 9, 2007, May 22, 2007 and June 12, 2007, and reported the aforesaid child abuse events she had witnessed on the premises of defendant YWCA, as

well as defendant Rinaldo's actions toward the plaintiff, to the City of White Plains Police .

34. Plaintiff, while at the Police Department for the City of White Plains, signed typewritten reports detailing the aforementioned incidents, and had witnesses acknowledge the aforesaid reports. I reported other incidents of child abuse to the White Plains Police Department as well. At the instruction of the investigating officer, I did not include each and every incident of abuse.

35. Upon information and belief, certain officers of the City of White Plains Police Department reported the identity of the plaintiff to defendants Rinaldo, Huemann, and/or YWCA as having reported the aforementioned child abuse.

36. Upon information and belief, the City of White Plains Police were wrongly told by Defendants Rinaldo, Huemann, and YWCA that there were never any other reports of abuse concerning Defendant Rinaldo.

37. Shortly following the aforementioned reports filled out by the plaintiff at the White Plains Police Department, defendant YWCA terminated the plaintiff's employment.

38. Plaintiff suffers from lost sleep, nightmares, fear of returning to work, and general anxiety due to the actions and threats of Defendant Rinaldo and how Defendant YWCA illegally handled such threats and actions.

39. Despite Plaintiff repeatedly asking Defendant Heumann throughout the Spring of 2007, for training as a Child Development Associate, (CDA), such training was denied to Plaintiff while at the same time being provided to other employees.

40. Defendants' refusal to provide the CDA training to Plaintiff was pretext for the

Defendants otherwise pretextual and nefarious conduct of Defendants' firing of Plaintiff for failing to enroll in and complete CDA training.

41. Plaintiff was asked by Defendant Huemann to attend a CDA credential program and was told that Plaintiff and Defendant Huemann needed to set up a meeting to proceed. Defendant Huemann set up several meetings, for which she never appeared except for one in which she left immediately, before the meeting could begin.

42. Plaintiff met with Defendant Huemann prior to the May 11, 2007, the CDA application deadline. Defendant Huemann told Plaintiff words to the effect of "we wouldn't have to worry about it with all that was going on with this investigation."

43. Plaintiff again questioned the need for a CDA when a May newsletter was published by Defendant YWCA stating words to the effect of "[Defendant Huemann has] begun the process of hiring additional staff to meet our needs as well as the requirements of the NYS Office of Children and Family Services Licensing Department." Upon information and belief, the NYS Office of Children and Family Services Licencing Department requires a CDA credential. Defendant Huemann responded that there was no need to be concerned or worried about it.

**AS AND FOR A FIRST CLAIM AGAINST**
**AGAINST DEFENDANT RINALDO**
**FOR CIVIL ASSAULT AND BATTERY**

44. Plaintiff repeats and reiterates each and every fact contained in paragraphs "1" through "43" as though more fully stated herein.

45. Defendant Rinaldo's conduct as accepted and approved by Defendant Heumann and Defendant YMCA, included bodily contact, made with intent, and offensive in nature and that on several occasions resulted in offensive and unwanted bodily contact with Plaintiff.

46. Defendant Rinaldo made threatening statements to the plaintiff placing the plaintiff in fear of her personal safety and welfare and that of plaintiff's family.

47. Defendant Rinaldo on one occasion physically touched the plaintiff on the left side of her body, shoving her into a desk.

48. Defendant Rinaldo on another occasion threw a plastic lunch tray at the plaintiff, causing the plaintiff to fear for her safety.

49. The aforementioned physical contact was offensive to the plaintiff.

50. The aforesaid threatening remarks and conduct was offensive to the plaintiff.

51. The aforementioned actions of the defendant Rinaldo were of a type a person of ordinary sensibilities would have found offensive.

52. Nothing in either the plaintiff's conduct either implicitly or explicitly communicated consent to the aforementioned actions of the defendant Rinaldo.

53. Nothing in the plaintiff's conduct or surrounding circumstances either justified or necessitated the aforementioned actions of the defendant Rinaldo.

54. Defendant Rinaldo had the real or apparent ability to bring about harmful and offensive bodily contact.

55. The aforementioned conduct caused Plaintiff to be in apprehension of imminent harmful and offensive conduct.

56. Defendant Rinaldo's actions against the plaintiff constituted civil assault and

battery actionable for damages under the common law of the State of New York.

57. As a direct result of the aforementioned assault and battery, the plaintiff suffered severe shock, extreme emotional upset, and personal injury.

**AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS RINALDO, HEUMANN AND YWCA FOR HOSTILE WORK ENVIRONMENT:**

58. Plaintiff repeats and reiterates each and every fact contained in paragraphs "1" through "57" as though more fully set forth herein.

59. Plaintiff suffered with a hostile work environment for the school year 2006-2007 where the frequency of the discriminatory conduct was routine and ongoing.

60. The conduct directed at Plaintiff by all Defendants was extreme and outrageous and with a high level of severity that no reasonable person could accept and constituted a hostile work environment.

61. The hostile work environment created by the Defendants was extremely threatening and humiliating.

62. The Defendants creation of the hostile work environment for Plaintiff greatly affected Plaintiffs work performance and when it had run its course, Plaintiff was fired.

63. Plaintiff was repeatedly assaulted by Defendant Rinaldo.

64. Plaintiff reported each and every assault to Defendant Huemann.

65. Defendant Huemann did nothing to punish the assaults, or to prevent future assaults from occurring.

66. Defendant Rinaldo made repeated harassing statements to Plaintiff.

67. Plaintiff reported each and every instance of harassment to Defendant Huemann.

68. Defendant Huemann did nothing to punish the harassment, or to prevent future harassment from occurring.

69. Plaintiff was asked by Defendant Huemann to attend a CDA credential program and was told that Plaintiff and Defendant Huemann needed to set up a meeting to proceed. Defendant Huemann set up several meetings, for which she never appeared. Heumann did appear at one meeting, but immediately left before the meeting could begin.

70. Plaintiff met with Defendant Huemann prior to the May 11, 2007 CDA application deadline. Defendant Huemann told Plaintiff words to the effect of "we wouldn't have to worry about it with all that was going on with this investigation."

71. Plaintiff again questioned the need for a CDA when a May newsletter was published by Defendant YWCA stating words to the effect of "[Defendant Huemann has] begun the process of hiring additional staff to meet our needs as well as the requirements of the NYS Office of Children and Family Services Licensing Department." Upon information and belief, the NYS Office of Children and Family Services Licensing Department requires a CDA credential. Defendant Huemann responded that there was no need to be concerned or worried about it.

72. The motivation for this conduct was Plaintiffs' reporting of child abuse as required by law, and her exercise of protected speech about a matter of public concern.

73. The above actions caused Plaintiff's work environment to be permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

**AS AND FOR A THIRD CLAIM AGAINST DEFENDANT YWCA FOR ILLEGAL TERMINATION UNDER STATE WHISTLE-BLOWING STATUTE (NY LABOR LAW SECTION 740):**

74. Plaintiff repeats and reiterates each and every fact contained in paragraphs "1" through "73" as though more fully set forth herein.

75. Plaintiff was fired because she disclosed, and / or threatened to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety.

76. Plaintiff was fired because she provided information to the White Plains Police who were conducting an investigation into multiple allegations of child abuse and / or neglect by Defendants' employees and by extension by the entire organization.

76. Defendant YWCA wrongfully terminated the Plaintiff's employment without good cause and strictly as a retaliatory measure for fulfilling her duty to report child abuse.

77. Defendants wrongly fired Plaintiff because she refused to participate in any such activity, policy or practice in violation of a law, rule or regulation, i.e. child abuse or the cover up of child abuse.

78. The child abuse at Defendant YWCA was a violation of law that created and presented a substantial and specific danger to public health and safety.

79. As a direct result of the aforementioned wrongful termination, the plaintiff suffered severe shock, extreme emotional upset, lost earnings, and lost earnings capacity.

**AS AND FOR FOURTH CLAIM AGAINST DEFENDANT YWCA FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS:**

80. Plaintiffs repeat, reiterate and re-allege each and every allegation numbered "1" through "79" of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

81. Plaintiff is a class of one.

82. Her rights to Equal Protection pursuant to the Fifth and the Fourteenth Amendments to the constitution have been violated as enforced by 42 U.S.C. §1983.

83. Plaintiff was singled out by Defendants as it concerned Defendants refusal to provide CDA training.

84. Plaintiff was singled out as it concerned her being fired for reporting child abuse.

85. By reason of the foregoing allegations, plaintiff has acquired a property right in her employment meriting protection under the Fourteenth Amendment of the United States Constitution as enforced by 42 U.S.C. §1983.

85. By reason if its wrongful actions, the defendant YWCA acting under color of law has deprived petitioner of her property right in her employment in violation of both of her substantive and procedural constitutional due process rights.

86. As a consequence thereof, petitioner is entitled to relief pursuant to 42 U.S.C. §1983, as well as costs of this proceeding, inclusive of attorney's fees, as provided for by 42 U.S.C. §1988.

**AS AND FOR A FIFTH CLAIM AGAINST DEFENDANTS RINALDO, HUEMANN, AND YWCA FOR INTENTIONAL INFLICTION OF EMOTIONAL DURESS**

87. Plaintiff repeats and reiterates each and every fact contained in paragraphs "1" through "86" as though more fully set forth herein.

88. The conduct directed at Plaintiff by all Defendants was extreme and outrageous conduct.

89. All Defendants herein exhibited the intent to cause, or disregard the substantial probability of causing, severe emotional distress to Plaintiff.

90. The Defendants conduct had a direct casual relationship to Plaintiffs injuries.

91. As a result of the Defendants' conduct, she suffers from severe emotional distress.

92. On numerous occasions, Defendant Rinaldo assaulted and used abusive language towards Plaintiff.

93. Defendant Rinaldo's conduct caused Plaintiff to fear for her safety and the safety of her children.

94. Plaintiff reported this conduct to Defendant Huemann, who did nothing to punish it, or to prevent further occurrences.

95. The conduct of Defendants Rinaldo, Huemann, and YWCA was extreme and outrageous, exceeding the reasonable bounds of decency tolerated by a decent society.

96. Defendants Rinaldo, Huemann, and YWCA intended to cause or disregarded a substantial possibility of causing severe emotional distress.

97. Defendants Rinaldo, Huemann, and YWCA caused Plaintiff to suffer severe

emotional harm and psychological and mental distress and anxiety and to continue to suffer from same as a result of their extreme and outrageous conduct that exceeds the bounds of decency.

**AS AND FOR AN SIXTH CLAIM AGAINST DEFENDANTS RINALDO, HUEMANN, AND YWCA FOR DEFAMATION**

98. Plaintiff repeats and reiterates each and every fact contained in paragraphs "1" and "97" as though more fully set forth herein.

99. Defendants made statements of a defamatory nature that referred to Plaintiff and the same was published to someone other than the Plaintiff and Plaintiff suffered harm as a result.

100. Defendants Rinaldo, Huemann, and YWCA have published malicious lies about Plaintiff, to wit, that she abused a child.

101. By reason of those malicious lies having been spoken of and concerning the plaintiff, the plaintiff has been labeled as a child abuser and held up to public hatred, contempt, ridicule, and disgrace; has been injured in her reputation in both her workplace and her private life; and has suffered and continues to suffer severe mental anguish.

102. The malicious lies would be reasonably understood to be about Plaintiff.

103. The malicious lies were communicated to persons other then Plaintiff.

104. The malicious lies of Defendants concerning Plaintiff were part of the conspiracy to wrongfully discharge her.

105. The malicious lies of Defendants concerning Plaintiff caused her to lose gainful employment and hinder her from gaining other gainful employment.

106. By reason of the foregoing, Plaintiff was and continues to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits.

**WHEREFORE** a judgment is respectfully demanded:

a. Awarding as against all defendants such compensatory damages as a jury may impose;

b. Awarding as against all defendants punitive damages as a jury may impose;

c. Ordering defendant YWCA to reinstate the plaintiff's employment with back pay and benefits;

d. Ordering defendant YWCA to take corrective actions to change the hostile working environment previously permitted;

e. Awarding reasonable attorney fees and costs;

f. Granting such other and further relief as may be just, proper and equitable.

Dated: Katonah, New York
July 31, 2008

**LAW OFFICE OF PETER D. HOFFMAN, P.C.**

By: ______________________

Peter D. Hoffman, Esq. (PH-8306)
Attorneys for Plaintiff Eileen Lenahan
200 Katonah Ave.
Katonah, NY 10536
Phone: 914-232-2242